PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

PRICE MONTGOMERY,          )
                           )   CASE NO.  4:17CV2326
           Plaintiff,      )
                           )
       v.                  )   JUDGE BENITA Y. PEARSON
                           )
MAURICE FERENTINO, *et al.*, )
                           )   **MEMORANDUM OF OPINION**
           Defendants.     )   **AND ORDER**


In his Complaint (ECF No. 1), *Pro Se* Plaintiff Price Montogomery, a federal inmate,

asserts claims against 26 Defendants pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown*

*Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Plaintiff claims that the

Defendants, acting under color of federal law, violated his constitutional rights under the Sixth,

Eighth, and Fourteenth Amendments to the United States Constitution because they interfered

with his right to counsel, were deliberately indifferent to his health and safety, and conspired to

violate his constitutional rights.  ECF No. 1 at PageID #: 1-2, ¶ 1-2.  Plaintiff also claims that,

pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over his state law

allegations of intentional misrepresentation and infliction of emotional distress.  ECF No. 1 at

PageID #: 2, ¶ 1, 3.  Montgomery seeks monetary relief.  ECF No. 1at PageID #: 45-46.

### I.  Background

Plaintiff states that at the time of the events at issue, he was a pretrial detainee at the

Northeast Ohio Correctional Center ("NEOCC"), also known as Corrections Corporation of

(4:17CV2326)

America ("CCA"), in Youngstown, Ohio.  ECF No. 1 at PageID #: 2, ¶ 4.  NEOCC is a private

prison owned and operated by CCA, and the Federal Bureau of Prisons has contracted with CCA[1]

to house and provide services to federal prisoners.  *See Ayon v. Ne. Ohio Corr. Ctr.*, 478

Fed.Appx. 999, 1000 (6th Cir. 2012); *see also Schumacher v. Corr. Corp. of Am.*, No.

4:15CV01919, 2016 WL 3629015, at *2 (N.D. Ohio July 7, 2016) (Pearson, J.) ("CCA is a

private corporation that operates a federal prison (NEOCC).").

All Defendants are sued in their individual capacities, and identified by Plaintiff in the

Complaint as follows:

1.  Maurice Ferentino - an agent of Alcohol Tobacco and Firearms agency.  ECF No. 1 at PageID #: 2, ¶ 5.

2.  Jamie Ball - an agent of Internal Revenue Service Agency.  ECF No. 1 at PageID #: 2, ¶ 6.

3.  Neil Carmen - an agent of Alcohol Tobacco and Firearms agency.  ECF No. 1 at PageID #: 2, ¶ 7.

4.  Robert Iuzzolino - Regional Director Pennsylvania Office of Attorney General.  ECF No. 1 at PageID #: 2, ¶ 8.

5.  Timothy Rush - Pittsburgh Police Department detective.  ECF No. 1 at PageID #: 3, ¶ 9.

6.  David Yemma - employed by CCA as Chief of Security.  ECF No. 1 at PageID #: 3, ¶ 10.

7.  Ryan Wyman - employed by CCA as a Safety in Security (S.I.S.) Officer.  ECF No. 1 at PageID #: 3, ¶ 11.

---

[1]  CCA has rebranded as CoreCivic.  *See* http://www.correctionscorp.com/ (last visited December 27, 2019).

(4:17CV2326)

8.  Alphonso Evans - inmate at CCA acting as an agent for the government.  ECF No. 1 at PageID #: 3, ¶ 12.

9.  Marzelle Turner - an inmate at CCA acting in concert with a government agent.  ECF No. 1 at PageID #: 3, ¶ 13.

10.  Michael Pugh - employed by CCA as the Warden.  ECF No. 1 at PageID #: 3, ¶ 14.

11.  Laura Beddard - employed by CCA as the Warden.  ECF No. 1 at PageID #: 3, ¶ 15.

12.  Latosia Austin - employed by CCA as the Unit Manager.  ECF No. 1 at PageID #: 3, ¶ 16.

13.  Patricia Macklin - CCA employee, title unknown.  ECF No. 1 at PageID #: 3, ¶ 17.

14.  Robert Macklin - employed by CCA as a S.I.S. Officer.  ECF No. 1 at PageID #: 3, ¶ 18.

15.  Dennis Johnson - employed by CCA as the Assistant Warden.  ECF No. 1 at PageID #: 3, ¶ 19.

16.  Lisa Antonucci - employed by CCA as the Quality Assurance Manager and Disciplinary Hearing Officer.  ECF No. 1 at PageID #: 4, ¶ 20.

17.  Jennifer Frazzini - employed by CCA as the Chief of Unit Management.  ECF No. 1 at PageID #: 4, ¶ 21.

18.  Amy Sullivan (aka Amy Bundy) - employed by CCA as Grievance Coordinator.  ECF No. 1 at PageID #: 4, ¶ 22.

19.  Christopher LaRose - employed by CCA as the Warden.  ECF No. 1 at PageID #: 4, ¶ 23.

20.  Unit Manager Modelski - employed by CCA as the Unit Manager.  ECF No. 1 at PageID #: 4, ¶ 24.

21.  Anna Cox - employed by CCA as the Records Manager.  ECF No. 1 at PageID #: 4, ¶ 25.

(4:17CV2326)

22.  Jeff Dutton - employed by CCA as a counselor.  ECF No. 1 at PageID #: 4, ¶ 26.

23.  Capt. Dragovich - employed by CCA as a Captain.  ECF No. 1 at PageID #: 4, ¶ 27.

24.  Jennifer McIntosh - employed by CCA as the Central Control Officer.  ECF No. 1 at PageID #: 4, ¶ 28.

25.  Charlotte Daniel - employed by CCA, title unknown.  ECF No. 1 at PageID #: 4-5, ¶ 29.

26.  Sean Daucherty - employed by CCA as an S.I.S. Officer and Investigator.  ECF No. 1 at PageID #: 5, ¶ 30.

Plaintiff asserts lengthy and detailed factual allegations in support his claims (*see* ECF No. 1 at PageID #: 5-39, ¶¶ 31-215).  Those facts are briefly summarized below.  More detailed factual allegations are addressed later as necessary for the Court's analysis.

On February 2, 2015, Plaintiff was arrested in Columbus, Ohio by a member of the United States Fugitive Task Force and taken to the Franklin County Jail.  ECF No. 1 at PageID #: 5, ¶ 31.  Plaintiff alleges that while at the Franklin County Jail, Defendants Ferentino and Rush introduced themselves as investigators and "attempted to conduct/engage plaintiff in a secret custodial interrogation." *See* ECF No. 1 at PageID #: 5, ¶ ¶ 32-34.  Montgomery refused to speak with them and requested a lawyer. *See* ECF No. 1 at PageID #: 6, ¶¶ 35-39.

The next day, Plaintiff appeared in the United States District Court for the Southern District of Ohio on charges for which he had been arrested arising out of the Western District of

Pennsylvania,[2] and was appointed counsel.  *See* ECF No. 1 at PageID #: 6, ¶ 40.  After the

appearance, Plaintiff was taken to a room where Ferentino and Rush were present, where he

again told them that he would not speak with them.  Rush and Ferentino persisted, but Plaintiff

consistently refused to speak with them and referred them to his lawyer.  Plaintiff informed his

lawyer that Ferentino and Rush had attempted to "interrogate" him outside the presence of

counsel.  *See* ECF No. 1 at PageID #: 6-8, ¶¶ 41-50.

On March 4, 2015, Plaintiff was transferred to CCA as a pretrial detainee for the U.S.

Marshals Service.  *See* ECF No. 1 at PageID #: 9, ¶ 53.  On March 9, 2015, he was transported to

the United States District Court for the Western District of Pennsylvania.  At the courthouse,

Ferentino again attempted to "interrogate" Plaintiff, and Plaintiff again refused to speak with

Ferentino without his lawyer.  Ferentino gave Plaintiff his business card, and requested that

Plaintiff speak with his attorney about making a proffer.  *See* ECF No. 1 at PageID #: 9-10, ¶¶

57-58.  Plaintiff reported Ferentino's contact to his counsel, and assured counsel that he made no

statements to Ferentino.  *See* ECF No. 1 at PageID #: 10, ¶ 59.  Plaintiff was transported back to

CCA.

At CCA, Plaintiff alleges that he was first placed in the general population and given a

Low custody status.  Later, Plaintiff was moved to the Aggressive Unit despite allegedly not

meeting the criteria for that unit, and incorrectly labeled as a gang member.  Plaintiff claims that

these and other actions by Defendants were part of a conspiracy to place him in a cell with

---

[2] *United States v. Montgomery*, No. 2:14-cr-00205 (W.D. Penn. filed Aug. 26, 2014).  A jury returned a verdict of guilty as to all counts and Plaintiff is awaiting sentencing.

(4:17CV2326)

Defendant Evans in order to induce him to make incriminating statements regarding the charges against him. *See, e.g.,* ECF No. 1 at PageID #: 10-13, 16, 39-41, ¶¶ 60-71, 87-88, 218, 220, 221.

Plaintiff's factual allegations regarding Ferentino and Rush's attempts to "interrogate" him at the Franklin County Jail and federal courthouses, his security classification at CCA, and placement in a cell with a government informant wearing a recording device, form the bases of his primary claim for relief -- violation his Sixth Amendment right to counsel. *See* ECF No. 1 at PageID #: 38-44, ¶¶ 216-22, 223-24, 226-234.

While he was allegedly improperly housed in the Aggressive Unit, Plaintiff claims that he was assaulted by another inmate (Carde) and subject to a disciplinary proceeding as a result. Plaintiff contends that if he had not been improperly housed, he would not have been assaulted by Carde. *See* ECF No. 1 at PageID #: 11, 13, 15, ¶¶ 62-65, 72, 80. These facts form the bases of his Eighth and Fourteenth Amendment claims that the Defendants were deliberately indifferent to his health, exposed him to an unreasonable risk of harm, and failed to protect him from the assault by another inmate. *See* ECF No. 1 at PageID #: 40-44, ¶¶ 221, 222, 225.

## II. Standard of Review

*Pro se* pleadings are liberally construed by the Court. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Notwithstanding, the district court is required under 28 U.S.C. § 1915(e)(2)(B) to review all *in forma pauperis* complaints, and to dismiss before service any such complaint that the Court determines is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

(4:17CV2326)

relief against a defendant who is immune from such relief.  *See Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010).

In order to withstand scrutiny under § 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 471 (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), governs dismissals for failure to state a claim under § 1915(e)(2)(B)) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570)).  A complaint fails to state a claim on which relief may be granted when it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*

Fed. R. Civ. P. 8(a)(2) requires only that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The rule does not require detailed factual allegations.  That said, the pleader must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing Rule 8; *Twombly*, 550 U.S. at 555).  A complaint must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

(4:17CV2326)

After drawing all reasonable inferences from the factual allegations in the Complaint

(ECF No. 1) in Plaintiff's favor, the Court concludes that this action must be dismissed pursuant

to § 1915(e)(2)(B).

### III. Law and Analysis

**A. Failure to State a Claim Against Defendants Yemma, Wyman, Pugh, Johnson, Antonucci, Frazzini, Sullivan (aka Brady), LaRose, Cox, Dutton, Dragovich, and Daugherty**

Plaintiff asserts factual allegations in the Complaint concerning Defendants Yemma,

Wyman, Pugh, Johnson, Antonucci, Frazzini, Sullivan (aka Brady), LaRose, Cox, Dutton,

Dragovich, and Daugherty, and purports to seek money damages from them. *See* ECF No. 1 at

Page ID#: 45-46. He does not, however, assert any claim for relief against them. *See* ECF No. 1

at PageID #: 38-44. While some latitude must be extended to *pro se* plaintiffs with respect to

their pleadings, courts are not required to conjure up claims that are not squarely presented to

them. *See Thomas v. Brennan*, No. 1:18CV1312, 2018 WL 3135939, at *1 (N.D. Ohio June 26,

2018) (Gaughan, C.J.) (citing *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)

and *Erwin v. Edwards*, 22 F. App'x. 579, 580 (6th Cir. 2001)).

Because Plaintiff has not asserted any claims for relief against them, Defendants Yemma,

Wyman, Pugh, Johnson, Antonucci, Frazzini, Sullivan (aka Brady), LaRose, Cox, Dutton,

Dragovich, and Daugherty are dismissed from this action pursuant to § 1915(e)(2)(B). Even if

the Complaint (ECF No. 1) could be construed to assert Sixth or Eighth/Fourteenth Amendment

claims for relief against these CCA employees, those claims would be dismissed for the reasons

set forth below.

(4:17CV2326)

**B. Section § 1983 Claims**

In 42 U.S.C. § 1983, Congress provided a remedy for constitutional violations by state actors. The elements of a § 1983 claim in the Sixth Circuit are: "1) [Plaintiff] was deprived of a right secured by the federal Constitution or laws of the United States; 2) the deprivation was caused by a person acting under color of state law; and 3) the deprivation occurred without due process of the law." *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994) (citation omitted).

All of the other Defendants named in the Complaint (ECF No. 1) are federal employees or employees of CCA (a private corporation operating a federal prison), except for Timothy Rush (identified in the Complaint as a Pittsburgh Police Department detective) and Robert Iuzzolino (identified in the Complaint as the Regional Director Pennsylvania Office of Attorney General). A § 1983 claim cannot be asserted against the federal employees or CCA employees because they are not acting under color of state law. *See District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973) (§ 1983 does not reach actions of the federal government and its officers).

In order for Plaintiff to state a § 1983 claim against Rush and Iuzzolino, he "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). But the Complaint (ECF No. 1) does not allege that Rush and Iuzzolino (or any Defendant) acted under color of state law, or any allegation from which the Court could infer that Rush's and Iuzzolino's alleged actions were clothed with the authority of state law.

9

(4:17CV2326)

To the extent that Plaintiff asserts a § 1983 claim, he has failed to state a claim upon which relief can be granted, and those claims are dismissed pursuant to § 1915(e)(2)(B). *See West*, 487 U.S. at 49; *see also Lackey v. Callahan*, No. C-2-06-565, 2006 WL 2583294, at *1 (S.D. Ohio Sept. 6, 2006) (dismissing complaint pursuant to § 1915 for failure to state a § 1983 claim because "the complaint does not allege that defendants acted under color of [state] law when they allegedly harmed plaintiff").

### C. *Bivens* Claims

*Bivens* claims, named after a 1971 Supreme Court case, provides a cause of action for damages against an individual federal agent for violation of certain constitutional rights while acting under his or her federal authority. *Dolan v. United States*, 514 F.3d 587, 594 n.2 (6th Cir. 2008) (citing *Bivens*, 403 U.S. at 397). Plaintiff generally alleges that Defendants, "acting under color of federal law[,]" violated his Sixth, Eighth, and Fourteenth Amendment rights. ECF No. 1 at PageID #: 1-2, ¶ 1.

### 1. *Bivens* Claims are Time-Barred

Although the statute of limitations is considered to be an affirmative defense, if it is clear on a screening pursuant to § 1915 that an action is time-barred, the complaint may be dismissed sua sponte. *See Cannon v. Sheldon*, No. 4:16CV2801, 2017 WL 2832902, at *3 (N.D. Ohio June 29, 2017) (Pearson, J.) (citing *Fraley v. Ohio Gallia Cty.*, No. 97-3564, 1998 WL 789385, at *2 (6th Cir. Oct. 30, 1998) (complaint properly dismissed *sua sponte* for failure to state a claim under § 1915 when a complaint is time barred by applicable statute of limitations)); *Dellis v.*

*Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (complaint properly dismissed as frivolous under § 1915 where complaint is barred by applicable statute of limitations).

There is no statutorily imposed limitations period in *Bivens* actions, and federal courts apply the state statute of limitations for personal injury in the state where the claim arose. In Ohio, *Bivens* claims are subject to the two-year statute of limitations for personal injury. *See Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005). While the limitations period is controlled by state law, the issue of when a *Bivens* action accrues is governed by federal law. Under federal law, a *Bivens* claim accrues when a plaintiff knew or should have known of his injury, that is, when he should have discovered his injury through the exercise of reasonable diligence. *See Ruff v. Runyon*, 258 F.3d 498, 500-01 (6th Cir. 2001) (citations omitted).

### a. Sixth Amendment Claims

Plaintiff's Sixth Amendment claims consists of three components:  (1) Defendants' attempts to "interrogate" him outside the presence of counsel; (2) Defendants' alleged improper security classification and improper placement of Plaintiff in a unit for the purpose of subjecting him to a "secret interrogation" by a government informant; and, (3) a "secret" interrogation by Defendant inmate Evans, whom was wearing a recording device.  According to Plaintiff's claims for relief in the Complaint (ECF No. 1 at PageID #: 38-44), the events giving rise to his Sixth Amendment claims took place on March 9, 2015 (¶ 216), April 15, 2015 (¶¶ 217-18), April 17, 2015 (¶¶ 219-20), July 8, 2015 (¶¶ 223-24), July 30, 2015 (¶¶ 226-27), and August 5, 2015 (¶¶ 228-34).

(4:17CV2326)

With respect to the alleged "interrogations" by Rush and Ferentino on March 9, 2015 in violation of Plaintiff's Sixth Amendment right to counsel, Plaintiff's factual allegations show that he believed at the time that Defendants' efforts were improper, he consistently refused to speak with them, requested a lawyer, and reported their communications to his counsel. *See* ECF No. 1 at PageID #: 5-9, ¶¶ 33-51. At the time he was moved from the general population to the Aggressive Unit, and moved back and forth between units on April 15 and 17, 2015, Plaintiff believed then he did not meet the criteria for the Aggressive Unit and the unit housed government informants, and sought to be returned to the general population. *See* ECF No. 1 at PageID #: 10-11, ¶¶ 61-65.

For the balance of Plaintiff's claims for relief, occurring between July 8 and August 5, 2015, Plaintiff claims that his constitutional rights were violated when Defendants moved him into a cell with Evans, who was a government informant, affixed recording devices on Evans, and engaged in other activities designed to induce Plaintiff to make incriminating statements. While Plaintiff did not know Evans was a government informant at the time, (*see* ECF No. 1 at PageID #: 16, ¶ 87), he learned of it when Defendant Ferentino filed a criminal complaint on October 30, 2015, which was "formally served" upon Plaintiff on November 4, 2015 (*see* ECF No. 1 at PageID #: 25-26, ¶¶ 134-39).

This action was filed on November 6, 2017. Plaintiff knew of the alleged injuries supporting his Sixth Amendment *Bivens* claims with respect to events on March 9, April 15, April 17, July 8, July 30, and August 5, 2015, more than two years before he filed the Complaint

(4:17CV2326)

(ECF No. 1).  Accordingly, those claims are barred by the statute of limitations and dismissed pursuant to § 1915(e)(2)(B).

**b. Eighth/Fourteenth Amendment Claims**

Some of the same factual allegations supporting Plaintiff's Sixth Amendment claims also support his Eighth/Fourteenth Amendment claims.  Plaintiff alleges that, on April 17, 2015, Defendants Modelski and McIntosh violated his constitutional rights by moving him from the general population to the Aggressive Unit, even though Defendants were aware that he allegedly did not meet the criteria for  that unit, thereby exposing him to an unreasonable risk of serious injury in deliberate indifference to his future health.  *See* ECF No. 1 at PageID #: 40, ¶¶ 221-22. Plaintiff also alleges that Defendants Beddard, Modelski, and McIntosh failed to protect him when he was assaulted by inmate Carde on July 24, 2015, also constituting deliberate indifference to his health and safety in violation of the Eighth and Fourteenth Amendments.  *See* ECF No. 1 at PageID #: 41, ¶ 225.

The factual allegations in the Complaint (ECF No. 1) show that Plaintiff was aware of his alleged constitutional injury at the time the events giving rise to those injuries took place. Plaintiff believed at the time he was moved to the Aggressive Unit on April 17, 2015, that Defendants knew he did not satisfy the criteria for that unit, articulated that belief to CCA staff, and argued that he should be moved back to the general population.  *See* ECF No. 1 at PageID #: 11,  ¶¶ 62-65.  Plaintiff was also aware of his injury at the time of his alleged assault by another inmate (Carde) on July 24, 2015, as well as the subsequent disciplinary process that resulted therefrom.  *See* ECF No. 1 at PageID #: 13, 18, ¶¶ 72, 95.

The two-year statute of limitations for Plaintiff's *Bivens* claims accrues when Plaintiff knew or should have known of his injuries arising from the alleged constitutional violations. *See Ruff*, 258 F.3d at 500-01. Here, Plaintiff knew of the injuries supporting his Eighth/Fourteenth Amendment *Bivens* claims at the time they occurred -- more than two years before the Complaint (ECF No. 1) was filed in November 2017. Accordingly, these claims are time-barred and dismissed under § 1915(e)(2)(B).

But even if Plaintiff's Sixth Amendment and Eighth/Fourtheenth Amendment claims are not time-barred, Plaintiff nevertheless fails to state a claim for those alleged constitutional violations for the reasons that follow.

### 2. Failure to State a Sixth Amendment Claim

In 42 U.S.C. § 1983, Congress provided a broad remedy for alleged constitutional violations by state actors. But, no such broad remedy has been provided by Congress for constitutional violations by agents of the federal government. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1848 (2017). The Supreme Court has recognized *Bivens* causes of action in Fourth, Fifth, and Eighth Amendment contexts. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66-68 (2001). In *Ziglar*, the United States Supreme Court declined to extend implied damages actions to enforce the United States Constitution beyond these existing contexts, and expanding the *Bivens* remedy "is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675).

> In *Bivens*, decided in 1971, the Supreme Court recognized an implied damages action to compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. Since then, the Supreme Court allowed *Bivens* remedies in only two other contexts: (1) in a

(4:17CV2326)

> Fifth Amendment gender-discrimination case, *Davis v. Passman*, 442 U.S. 228 (1979); and (2) in an Eighth Amendment Cruel and Unusual Punishments Clause case, *Carlson v. Green*, 446 U.S. 14 (1980). The Supreme Court has not approved of an implied damages remedy under the Constitution itself. *Ziglar*, 137 S. Ct. at 1855.

*Banks v. LaRose*, No. 4:17CV2479, 2018 WL 1942195, at *2 (N.D. Ohio April 25, 2018) (Pearson, J.).

Indeed, the Supreme Court has declined to create an implied damages remedy under *Bivens* for the following alleged Constitutional violations: a First Amendment suit against a federal employer (*Bush v. Lucas*, 462 U.S. 367, 390 (1983)), a race discrimination suit against military officers (*Chappell v. Wallace*, 462 U.S. 296, 297, 304-305 (1983)), a substantive due process suit against military officers (*United States v. Stanley*, 483 U.S. 669, 671-72, 683-84 (1987)), a procedural due process suit against Social Security officials (*Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988)), a procedural due process suit against a federal agency for wrongful termination (*F.D.I.C. v. Meyer*, 510 U.S. 471, 473-474 (1994)), an Eighth Amendment suit against a private prison operator (*Malesko*, 534 U.S. at 63), a due process suit against officials from the Bureau of Land Management (*Wilkie v. Robbins*, 551 U.S. 537, 547-48, 562 (2007)), and an Eighth Amendment suit against prison guards in a private prison (*Minneci v. Pollard*, 565 U.S. 118, 120 (2012)). *Ziglar*, 137 S. Ct. at 1856-57.

Whether to expand *Bivens* claims beyond those that are currently available under the existing law requires the Court to consider separation-of-powers principles, and to inquire whether Congress, rather than the judiciary, should decide whether to authorize an implied damages suit for a constitutional violation. *Id.* at 1857 (citing *Bush*, 462 U.S. at 380). "The

15

answer most often will be Congress[,]" and "a *Bivens* remedy will not be available if there are 'special factors counseling hesitation in the absence of affirmative action by Congress.'" *Id.* (some internal quotation marks omitted) (quoting *Carlson*, 446 U.S. at 18). If there are "sound reasons to think that Congress might doubt the efficacy or necessity of a damages remedy" or if there is an alternative remedy for protecting the injured party's interest, the Court should refrain from providing for expanding existing *Bivens* damages remedies. *Id.* at 1858.

Plaintiff's Sixth Amendment *Bivens* claim for violation of his right to counsel does not fall within any of the existing contexts for which the Supreme Court has implied a *Bivens* remedy. The Supreme Court has not recognized an implied cause of action under *Bivens* for alleged violations of the Sixth Amendment. *See Sharratt v. Murtha*, 437 F. App'x 167, 170 (3rd Cir. 2011) (expressing doubt as to whether alleged violation of Sixth Amendment was a cognizable *Bivens* cause of action) (citing *Malesko*, 534 U.S. at 68); *Reyes v. Sedillo*, 222 F. App'x 753, 754 n. 2 (10th Cir. 2007) (noting without deciding the issue of whether plaintiff can assert a cognizable *Bivens* cause of action for alleged violation of the Sixth Amendment) (citing *Malesko*, 534 U.S. at 66-68 (explaining that the Supreme Court has recognized *Bivens* causes of action only in Fourth, Fifth, and Eighth Amendment cases)); *Mathew v. Cent. Falls Det. Facility Corp.*, No. 09-253S, 2011 WL 6056713, at *8 (D.R.I. Sept. 30, 2011) (Sixth Amendment *Bivens* claim legally deficient because the Supreme Court has never recognized a right to bring a *Bivens* claim in the context of the Sixth Amendment) (citing *Malesko*, 534 U.S. at 66-68), *report and recommendation adopted*, No. 09-253-S, 2011 WL 6097978 (D.R.I. Dec. 6, 2011), *aff'd*, No. 12-1094 (1st Cir. June 12, 2014); *Teague v. Clark*, No. 06-CV-02588-LTB-CBS, 2008 WL

2235687, at *7 n. 2 (D. Colo. May 27, 2008) (noting without deciding whether an alleged Sixth

Amendment violation is cognizable under *Bivens*) (citing *Malesko*, 534 U.S. at 66-68).

Expanding *Bivens* remedies is "disfavored." *Ziglar*, 137 S. Ct. at 1857. Given the

Supreme Court's decision in *Ziglar* and consistent refusal "to extend *Bivens* to any new context

or new category of defendants" for the past 30 years, the Court declines to extend *Bivens* and

imply a new constitutional damages remedy in this context to an alleged Sixth Amendment

violation. *Id.* (citation omitted). Accordingly, Plaintiff fails to state a *Bivens* claim under the

Sixth Amendment, and those claims are dismissed pursuant to § 1915(e)(2)(B).

### 3. Failure to State an Eighth/Fourteenth Amendment Claim

As an initial matter, Plaintiff claims that he was a pretrial detainee during the events at

issue here. *See* ECF No. 1 at PageID #: 2, ¶ 2. As a pretrial detainee, Plaintiff is not protected by

the Eighth Amendment. However, the Eighth Amendment rights of prisoners are analogized to

those of pretrial detainees under the Fourteenth Amendment. *See Roberts v. City of Troy*, 773

F.2d 720, 723 (6th Cir. 1985) (citations omitted).

Plaintiff claims that he was incorrectly identified as a Security Threat Group Member and

a "Homewood Crip" and improperly placed in the Aggressive Unit at CCA because he allegedly

did not meet the criteria for that unit. *See* ECF No. 1 at PageID #: 11, 19, ¶¶ 62-65, 100.

Plaintiff alleges that Defendants Modelski and McIntosh violated his constitutional rights by

moving him from the general population to the Aggressive Unit because in that unit, he was

exposed to an  unreasonable risk of serious injury, and Defendants were deliberately indifferent

to his future health. *See* ECF No. 1 at PageID #: 40, ¶¶ 221-22. Finally, Plaintiff claims that his

constitutional rights were violated because Defendants Beddard, Modelski, and McIntosh failed to protect him when he was assaulted by inmate Carde, constituting deliberate indifference to his health in violation of the Eighth and Fourteenth Amendments. *See* ECF No. 1 at PageID #: 41, ¶ 225.

"Federal statutory law gives federal prison officials full discretion in the treatment of prisoners and does not restrict the authority of prison officials over the inmates as to placement in more restrictive living status, transfer to other prisons, . . . and deprivation of privileges." *Walker v. Hughes*, 558 F.2d 1247, 1252-53 (6th Cir. 1977) (citations omitted). The Constitution does not create any right in prisoners with respect to placement in segregation, to be held in a specific security classification or to be confined in any particular prison. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976)); *see also Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145 (6th Cir. 2002) (prisoner has no constitutional right to a specific security classification or placement in a particular prison) (collecting cases); *Walker*, 558 F.2d at 1252. Thus, Plaintiff fails to state a *Bivens* claim with respect to his unit placement and security classification at CCA, and those claims are dismissed pursuant to § 1915(e)(2)(B).

The Eighth Amendment does, however, impose a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823 (1988)) (further citation omitted); *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998) ("Without question, prison officials have an affirmative duty to protect inmates

18

(4:17CV2326)

from violence perpetrated by other prisoners.") (citing *Farmer*, 511 U.S. at 833); *see also Enyart v. Ohio Dep't of Rehab. & Corr.*, No. 2:16-CV-161, 2017 WL 499085, at *2 (S.D. Ohio Feb. 7, 2017) ("Th[e] Sixth Circuit has recognized that prison officials have a duty to protect inmates against assault at the hands of other inmates.") (citing *Yaklich*, 148 F.3d at 600). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

To state an Eighth Amendment claim for failure to protect, Plaintiff must show that prison officials acted with a deliberate indifference to a substantial risk of serious harm. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 834) (further citation omitted). This showing contains both an objective and subjective component. *Dickerson v. Kentucky Corr. Psychiatric Ctr.*, No. 17-5412, 2017 WL 8792665, at *2 (6th Cir. Oct. 12, 2017) (citing *Curry*, 249 F.3d at 506). In a failure to protect case, the objective component requires Plaintiff to show that he was incarcerated under conditions posing a substantial risk of harm, and the subjective component requires Plaintiff to show that Defendants knew he faced a substantial risk of harm but failed to take reasonable steps to abate it. *Farmer*, 511 U.S. at 834, 837.

### a. Objective Component

Whether the objective component is analyzed based upon the severity of Plaintiff's injury, or whether there was an objectively substantial risk of harm to the inmate before the injury, Plaintiff alleges no facts from which the Court could infer that the objective component of the analysis is satisfied. *See Holder v. Saunders*, No. 13-38-ART, 2014 WL 7177957, at *5

19

(4:17CV2326)

(E.D. Ky. Dec. 16, 2014) (citing *Curry*, 249 F.3d at 506 (injuries suffered by inmate were serious enough to satisfy objective prong of *Farmer*) and *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (analyzing whether there was an objectively substantial risk of harm to the inmate before the injury occurred without regard to the injury incurred)); *Cordle v. Clark*, No. 6:17-23-DCR, 2018 WL 988075, at *3 (E.D. Ky. Feb. 20, 2018) (noting tension in Sixth Circuit case law on how to frame the objective inquiry) (citing *Holder*, 2014 WL 7177957, at *5).  The Complaint (ECF No. 1) is devoid of allegations from which the Court could infer the nature or severity of Plaintiff's injuries as a result of the alleged assault by Carde.  Plaintiff does not even allege that he required medical attention; the only post-assault facts alleged by Plaintiff concern the disciplinary process he underwent for fighting.  *See* ECF No. 1 at PageID #: 18-19, ¶¶ 95-99.

Nor does Plaintiff allege any facts from which the Court can infer that placement in the Aggressive Unit, in and of itself, posed an objective risk of harm to Plaintiff -- he only alleges that he did not meet the criteria for placement in the Aggressive Unit and that his security status was incorrect.  *Cf. Bishop*, 636 F.3d at 766 (placement of young, small, mentally "slow" inmate in cell with an older, stronger, predatory inmate would place the former in grave danger and satisfy the objective component of an Eighth Amendment analysis);  *Roane v. LaRose*, No. 4:14CV1779, 2015 WL 1998362, at *3 (N.D. Ohio April 30, 2015) (Pearson, J.) (placement of an inmate in a cell with rival gang member plausibly alleges an objective serious risk to inmate's safety).  "Prisons, after all, are dangerous places often full of people who have demonstrated aggression."  *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008).

20

That said, the failure to segregate violent inmates from non-violent inmates has been held to constitute "deliberate indifference" where there is a pervasive risk of harm or where the victim belonged to an identifiable group of prisoners for whom risk of assault is a serious issue.  *See Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).   But neither are alleged here. Nor does Plaintiff allege facts from which the Court could infer that Carde posed a risk of harm to a large class of inmates -- he simply identifies Carde as the inmate that assaulted him.  *See Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 842-43 (prison official aware of a substantial risk to safety of particular inmate) and *Curry*, 249 F.3d at 507-08 (prison official aware that particular prison guard had a history of racially motivated harassment)).

Accordingly, the Court concludes that Plaintiff has not alleged facts which, if believed, are sufficient to state a plausible claim with respect to the objective component of a deliberate indifference analysis.  But, even if the alleged facts could be construed to satisfy the objective component, Plaintiff's deliberate indifference claim fails on the subjective component.

## b.  Subjective Component

The subjective component of the deliberate indifference analysis requires plausible allegations that, if believed, show that prison officials knew of, but disregarded, a substantial risk to an inmate's  health or safety.  *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).  Deliberate indifference "entails something more than mere negligence."  *Farmer*, 511 U.S. at 835.  An official acts with deliberate indifference when he acts with "criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious

harm.  *Id.* at 837.  This standard is met if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

While Plaintiff alleges that various Defendants authorized moving him from unit to unit as described in the Complaint (ECF No. 1), he does not allege that they were aware of any potential danger to him in doing so, and consciously disregarded that risk.  The Complaint (ECF No. 1) contains no allegations from which the Court could infer that Defendants were subjectively aware that Plaintiff was "very likely" or in "imminent danger" of being assaulted in the Aggressive Unit or by Carde.  *See Baze v. Rees*, 553 U.S. 35, 49-50 (2008); *see also Stubbs v. Ohio Dep't of Rehab. & Corr.*, No. 1:17-CV-813, 2018 WL 575910, at *3 (S.D. Ohio Jan. 26, 2018) (no Eighth Amendment claim for failure to protect when plaintiff had been previously attacked by another inmate, but the allegation that the same inmate wanted to put plaintiff in the hospital again was insufficient to show that a future attack was likely) (citations omitted), *report and recommendation adopted*, No. 1:17CV813, 2018 WL 1305466 (S.D. Ohio March 12, 2018).

In the absence of alleged facts from which the Court could infer that Defendants were subjectively aware that Plaintiff faced a substantial risk of being assaulted, and failed to protect him from that risk,  Plaintiff fails to state an Eighth/Fourteenth Amendment deliberate indifference failure to protect claim, and that claim must be dismissed pursuant to § 1915(e)(2)(B).

### D. Failure to State a Civil Conspiracy Claim

"A civil conspiracy claim under § 1983 or *Bivens* lies where there is 'an agreement between two or more persons to injure another by unlawful action.'" *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). In order to prevail on such a claim, Plaintiff must show "'that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." *Id.* (quoting *Revis*, 489 F.3d at 290).

Plaintiff fails to state a claim for civil conspiracy. First, "'conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983' or *Bivens*." *Id.* (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). While Plaintiff claims in a conclusory fashion that Defendants conspired to violate his constitutional rights, the Complaint (ECF No. 1) does not contain facts from which the Court could infer that Defendants had an agreement to violate Plaintiff's constitutional rights. The Court is not bound to accept as true Plaintiff's legal conclusion that a conspiracy occurred. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Moreover, a conspiracy claim is not actionable alone -- there must be an underlying constitutional violation. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008) ("[T]o sustain a conspiracy action under § 1983 . . . a plaintiff must show an underlying actual denial of [his] constitutional rights.") (quoting *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d

701, 706 (11th Cir. 2010)); *Shapiro v. Goldman*, No. 14 Civ. 10119 (NRB), 2016 WL 4371741, at *21 (S.D.N.Y. Aug. 15, 2016) (no *Bivens* conspiracy when complaint fails to allege underlying constitutional violation) (citing *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)), *aff'd*, 696 F. App'x 532 (2d Cir. 2017). Because the Court has concluded that Plaintiff failed to state a *Bivens* claim for violations of the Sixth and Eighth/Fourteenth Amendments, he necessarily fails to state a claim for conspiracy to deprive him of those constitutional rights. *See Wiley v. Oberlin Police Dept.*, 330 F. App'x 524, 530 (6th Cir. 2009) (plaintiff cannot succeed on a civil conspiracy claim in the absence of an underlying constitutional violation) (citations omitted).

Accordingly, Plaintiff fails to state a claim for civil conspiracy to violate his constitutional rights, and those claims are dismissed pursuant to § 1915(e)(2)(B).

**E. State Law Claims**

In addition to his federal claims, Plaintiff alleges state law claims for intentional misrepresentation and infliction of emotional distress. *See* ECF No. 1 at PageID #: 2, ¶ 1. Even liberally construed, the Court has determined that the Complaint (ECF No. 1) fails to plausibly state any federal claims, and those claims are subject to summary dismissal under § 1915(e)(2).

To the extent the Complaint (ECF No. 1) alleges state law claims, the Court's supplemental jurisdiction over those claims is governed by 28 U.S.C. § 1367(c). The statute contains an express provision that permits the Court to decline supplemental jurisdiction over a state law claim when the Court has dismissed all of the claims over which the Court has original jurisdiction. 28 U.S.C. § 1367(c)(3). All of Plaintiff's federal claims have been dismissed, and

(4:17CV2326)

there appears to be no basis for diversity jurisdiction pursuant to 28 U.S.C. § 1332.  *See* ECF No. 1 at PageID #: 2, ¶ 3.

Accordingly, the Court declines to exercise supplemental jurisdiction over any state law claims that may be asserted in the Complaint (ECF No. 1), and they are dismissed without prejudice.  *See Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997) (noting that a district court may decline to exercise supplemental jurisdiction over state-law claims once it has dismissed all claims over which it possessed original jurisdiction).

## IV.  Conclusion

For all of the foregoing reasons, Plaintiff's federal claims are dismissed pursuant to 28 U.S.C. § 1915(e).  The Court declines to exercise jurisdiction over Plaintiff's state law claims, and those claims are dismissed without prejudice.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.


IT IS SO ORDERED.


 December 31, 2019                     */s/ Benita Y. Pearson*
Date                                           Benita Y. Pearson
                                               United States District Judge